J-S10024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| M.P.G. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| J.L.G. | : | No. 1364 MDA 2019 | |

Appeal from the Order Entered July 18, 2019,
in the Court of Common Pleas of Bradford County,
Domestic Relations at No(s): 19DR00247.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED: MAY 18, 2020**

In this matter, M.P.G. (Father) appeals the order obligating him to pay J.L.G. (Mother) for the support of their three children. Specifically, Father contends that the master and the trial court miscalculated the support obligation by failing to consider Mother's structured settlement payments as income. For the reasons below, we agree and remand for recalculation.

The relevant factual and procedural history may be summarized as follows. The parties appeared before the child support master on January 21, 2019. There, the master utilized the parties' W-2 statements to determine their monthly net incomes: Father's monthly net income was $2,797.04, and Mother's monthly net income was $1,941.75. Critically, the master did not consider Mother's additional income, her structured settlement payments. Mother testified that she receives a settlement payment each month in the

amount of $1,000. **See** N.T., 1/21/19, at 6. Mother explained that settlement compensates her for the loss of her leg when she was a child, and that she uses some portion of the settlement to pay for medical expenses not covered by insurance (relating to her prosthetic) as those expenses arise. **See id.** at 6.

Having excluded the settlement payments, the master applied the support guideline formula under Pa.R.C.P. 1910.16-4(a)(1)(Part A) and determined Father's preliminary obligation to be $1,031.32 per month for the support of the parties' three children. However, the master had to adjust this amount downward to reflect the parties' equally shared custody arrangement, which, in turn, necessitated a further adjustment to equalize the parties' monthly net incomes, pursuant to Pa.R.C.P. 1910.16-4(c)(1)-(2). **See** Pa.R.C.P. 1910.16-4 (a)(1)(Part D). Father was ultimately ordered to pay $427.65 per month.

Father filed exceptions with the trial court claiming the master should have included Mother's settlement payments when calculating her income. The trial court denied Father's exceptions, reasoning that the master essentially applied the deviation factors, specifically Pa.R.C.P. 1910.16-5(b)(5) ("medical expenses not covered by insurance"), to exclude the settlement payments from Mother's income. **See** Trial Court Opinion (T.C.O.), 10/15/19, at 4-5. Father presents this timely appeal. He raises the settlement issue through two interconnected questions:

1. Did the trial court err in failing to include the $1,000 structured settlement payment [Mother] receives each month as income to [Mother], in violation of Pa.R.C.P. 1910.16-2(a)(8)(iii)-(v)?

2. Did the trial court err in failing to include the $1,000 structured settlement payment [Mother] receives each month as income to [Mother] when [Mother] testified that she does not currently have a medical expense for which these funds are currently being used, but rather only that it is possible that she "may" have such expenses in the future?

Father's Brief at 2.

We begin with our standard of review:

We review child support awards for an abuse of discretion. A court does not commit an abuse of discretion merely by making an error of judgment. Rather, a court abuses its discretion if it exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. This Court has further observed that we will not disturb a support order unless the trial court failed to consider properly the requirements of the rules governing support actions.

*Hanrahan v. Bakker*, 186 A.3d 958, 966 (Pa. 2018) (citations omitted).

Pursuant to state and federal legislation, child support shall be awarded pursuant to standardized guidelines. *See* 23 Pa.C.S.A. § 4322(a); 42 U.S.C. § 667(a), (b)(2). Those guidelines are based on the reasonable needs of the child, and they specify how child support shall be calculated. "In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable

deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." 23 Pa.C.S.A. § 4322(a).

Thus, we turn to the definition of income as set forth in our Domestic Relations Code:

> "Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or **lump sum awards**, **without regard to source**, including lottery winnings; income tax refunds; insurance compensation **or settlements**; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302 (emphasis added).

Income is broadly defined to reflect the parties' **actual financial resources**. **See Mackay v. Mackay**, 984 A.2d 529, 537 (Pa. Super. 2009), *appeal denied*, 995 A.2d 354 (Pa. 2010) (citing **Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa. Super. 2004)) (emphasis added). The Pennsylvania Rules of Civil Procedure 1910.16-1 *et seq*. represent our Supreme Court's manifestation of these principles. **Hanrahan**, 186 A.3d at 966-967.

- 4 -

To calculate a party's income in a support matter, the Rules provide the following, in relevant part:

> **Rule 1910.16–2. Support Guidelines. Calculation of Net Income**
>
> Generally, the support amount awarded is based on the parties' monthly net income.
>
> **(a) Monthly Gross Income**. Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source. The statute lists many types of income including, but not limited to:
>
> > *(1)    wages*, salaries, bonuses, fees, and commissions;
> >
> > [...]
> >
> > (8)    other entitlements to money or lump sum awards, without regard to source, including:
> > > (i) lottery winnings;
> > >
> > > (ii) income tax refunds;
> > >
> > > *(iii)* insurance compensation or ***settlements;***
> > >
> > > *(iv) awards and verdicts*; and
> > >
> > > (v) payments due to and collectible by an individual regardless of source.

Pa.R.C.P.1910.16–2(a)(1), (8) (emphasis added).

The question before us is whether the trial court properly excluded the settlement payments Mother's receives each month. Father argues that the entirety of the monthly sum is includable as income.[1, 2]

In addition to the plain language in 23 Pa.C.S.A. § 4302 and Pa.R.C.P. 1910.16-2, this Court has long held that settlements, including personal injury settlements earmarked for other purposes, shall be considered when calculating income in a child support action. In **Butler v. Butler**, 488 A.2d 1141 (Pa. Super. 1985), an obligor-father argued that his entire lump sum tort award should not be considered as income, because at least some portion of the award was intended to compensate for his pain and suffering (as

---

[1] Mother did not submit an appellate brief.

[2] We note further that the trial court suggested that Father waived his entire challenge for his noncompliance with the Bradford County Local Rules governing exceptions. According to the court, Father did not abide by Local Rule 1910.12(e) for failing to identify in his exceptions whether the alleged error was of fact or law, for failing to identify the specific finding he challenged, and for not including the amount of support that should have been ordered. **See** T.C.O., at 1-2. However, the Pennsylvania Rules of Judicial Administration dictate:

> No case shall be dismissed nor request for relief granted or denied because of failure to initially comply with a local rule. In any case of noncompliance with a local rule, the court shall alert the party to the specific provision at issue and provide a reasonable time for the party to comply with the local rule.

Pa.R.J.A. No. 103(c)(8).

It is unclear whether the trial court allowed Father the opportunity to comply, but in either event, the court ultimately addressed the merits of Father's exceptions. Thus, the court was not so impeded by Father's noncompliance that it could not review the exceptions, and we conclude that Father's noncompliance would be an improper basis to find waiver.

opposed to compensate merely for his lost income). He argued further that the award was excludable because it resulted from an accident that predated the birth of the parties' child. *Butler*, 488 A.2d at 1143. We disagreed and held that the entire of the award was includable.

In *Darby v. Darby*, 686 A.2d 1346, 1349 (Pa. Super. 1996), an obligor-father attempted to distinguish *Butler* by arguing that his settlement payments represented compensation, not only for current pain, suffering and lost wages, but also for future debts, such as medical expenses. We reaffirmed *Butler*, concluding that even those settlements, which are meant to compensate for future medical expenses, are nevertheless includable:

> The award as actually received by appellant is a single fund which appellant may expend in his discretion. The whole tort award is subject to all appellant's debts. It would, indeed, call into question the sanity of the law if this Court were to rule that the tort award is available to pay debts to "the butcher, the baker and the candlestick maker but not debts to appellant's child for support."

*Darby*, 686 A.2d at 1349 (quoting *Butler*, 488 A.3d at 1143).

Returning to the instant matter, the trial court reasoned that Mother utilized her settlement payments to "pay the expenses associated with [Mother's] prosthetics (which enable her to work) cannot be discretionarily paid to the butcher, baker or candlestick maker and thus cannot be relied upon to support [the parties'] children." Trial Court Opinion (T.C.O.), 10/15/19, at 4.

- 7 -

The trial court cited these cases but misconstrued our holdings. The issue is not whether the income is discretionary. After all, income is rarely unencumbered from obligation. People spend income on all sorts of goods and services, some essential (the butcher and the baker) and some non-essential (candlesticks). They also spend income on necessities to generate more income, like a car to drive to work. But because "the duty to support one's child is absolute," they must spend income on child support. ***See, e.g., Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007). Our law has captured "settlements," among a litany of other revenue streams, not because it can be spent at a party's discretion, but to reflect the party's "actual financial resources." ***See*** 23 Pa.C.S.A. § 4302; ***see also*** Pa.R.C.P. 1910.16-2(a); ***and see Mackay***, 984 A.2d at 537. Thus, there is no question that Mother's settlement payments should have been included as income, notwithstanding that the settlement predated the birth of the parties' children (like in ***Butler***) or that some of the payments were used for medical expenses (like in ***Darby***).

Still, the question remains whether the trial court's decision to exclude Mother's settlement payments constituted an abuse of discretion. ***See Silver v. Pinksey***, 981 A.2d 284, 292 (Pa. Super. 2009) (*en banc*) ("When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground.") Adopting Mother's argument on exceptions, the trial court defended the master's recommendation in its Rule 1925(a) opinion:

Although the [master] did not specifically find application of Pa.R.C.P. [1910.16-5(b)(1), (6) (relating to deviations from the support guidelines)][3], perhaps he should have. He did find that the $1,000 per month was used for costs of prosthetics and medical care of [Mother]. He thus considered the unusual needs and medical expenses of [Mother] and excluded such income in calculation of support.

T.C.O. at 4-5.

Put another way, the court believed the master properly, albeit informally, applied the Rule 1910.16-5(b) factors to deviate from the guideline child support amount. But that was not what the master did. It was clear from the master's report and recommendation that the master deviated not from the **amount of child support**; instead, the master improperly deviated from the amount of Mother's **net income**. **See** Master's Findings/Recommendation at ¶19. The master plainly stated, "[Mother's] structured settlement benefit of $1,000 per month…**is not being considered as income** to her under Rule 1910.16-2(a)(8) as it covers her costs for prosthetics and medical care." **Id.** (emphasis added). This is a very subtle, but significant error.

Rule of Procedure 1910.16-5(b) lists those factors the trier-of-fact must consider if deviating from the guideline child support amount. Among them are the "unusual needs and unusual fixed obligations" and "medical expenses

_____

[3] In an apparent typo, the trial court cited a nonexistent rule, "Pa.R.C.P. 1910.12-5." Clearly the court meant to cite the 1910.16-5, which encompasses those factors the trier-of-fact must consider when deviating from the guideline support amount.

not covered by insurance." **See** Pa.R.C.P. 1910.16-5(b)(1), (6). At first blush, it would appear that the master's considerations were appropriate. However, the Rule clearly states: "The deviation applies to the amount of the support obligation and **not** to the amount of income." Pa.R.C.P. 1910.16-5(a) (emphasis added).

The master's error was significant, because as with any mathematical formula, following the correct order of operations is essential to reaching the correct result. The same holds true with the formula for calculating child support. Fundamentally, "the support guidelines determine the amount of support that a [] parent should pay based on the parties' combined monthly net income, as defined in Pa.R.C.P. 1910.16-2, and the number of persons being supported." Pa.R.C.P. 1910.16-1(a)(1).

In this matter, which involved the shared custody of three children with no obligation to pay spousal support or alimony *pendente lite*, the master had to calculate child support according to the following formula:[4]

First, the master had to determine the parties' gross incomes. **See** Pa.R.C.P. 1910.16-4(a)(1)(Part A)(line 1). As we discussed above, income includes "other entitlements to money or lump sum awards, without regard to

_____

[4] Rule 1910.16-4 ("Support Guidelines. Calculation of Support Obligation, Formula") was amended to reflect the changes to the Internal Revenue Code made by the federal Tax Cuts and Jobs Act of 2017. Because the instant support order was entered after January 1, 2019, the formula utilized is Parts A through E. **See** Pa.R.C.P. 1910.16-4(a)(1). In this case, the change did not affect the calculation of child support.

source, including settlements, awards, or verdicts." **See** Pa.R.C.P. 1910.16-2(a)(8).

Second, the master had to make proper deductions to arrive at the parties' net incomes. **See** Pa.R.C.P. 1910.16-4(a)(1)(Part A)(line 2). The list of the five allowable deductions is itemized at Rule 1910.16-2(c)(1)(i-v).[5] Notably, a party's "unusual needs" or "medical expenses not covered by insurance" are **not** among the proper income deductions under this Rule. (The master's error occurred at this step.)

Third, the master had to convert the net incomes into monthly amounts, and then combined them. That way, the master could consult the schedule listed in Rule 1910.16-3 and determine the **total** amount of support the parties owe. **See** Pa.R.C.P. 1910.16-4(a)(1)(Part C)(lines 16-20).[6]

Fourth, the master had to determine what percentage of that total amount each party's net income represented. **See** Pa.R.C.P. 1910.16-4(a)(1)(Part C)(line 21). Generally speaking, the obligor-parent pays the obligee-parent his/her respective percentage of the total; this figure is the monthly basic child support obligation.

_____

[5] The **only** items the trier-of-fact shall deduct from the gross income to arrive at the net income are: (i) federal, state, and local income taxes; (ii) unemployment compensation taxes and Local Services Taxes; (iii) F.I.C.A. payments and non-voluntary retirement payments; (iv) mandatory union dues; and (v) alimony paid to the other party. **See** Pa.R.C.P. 1910.16-2(c)(1)(i-v). The 2010 Explanatory Comment to this Rule indicates that this list is exclusive. **See id.** Explanatory Comment – 2010.

[6] Part B is omitted in this instance, because it concerns spousal support and alimony pendente lite. **See** Pa.R.C.P. 1910.16-4(a)(Part B.)

However, when parties have substantial or shared custody, as they did here, the master necessarily had to apply Part D of the support formula. ***See*** Pa.R.C.P. 1910.16-4(a)(1)(Part D)(line 25a-g).

Under Part D, the master had to adjust the basic support obligation downward to reflect the parties' equal custody. ***See*** Pa.R.C.P. 1910.16-4(a)(1)(Part D)(line 25a-e); ***see also*** Pa.R.C.P. 1910.16-4(c)(1). If the result of this downward adjustment caused the obligor (Father) to end up with a lower monthly net income than the obligee (Mother), then the master had to make a second Part D adjustment. ***See*** Pa.R.C.P. 1910.16-4(a)(1)(Part D)(line 25f); ***see also*** Pa.R.C.P. 1910.16-4(c)(2). The purpose of the second adjustment is to equalize the parties' monthly net incomes so the obligor would no longer be the party with the lower income. ***See id***. Whatever amount would equalize the monthly net incomes would constitute the obligor's adjusted basic child support amount. ***See*** Pa.R.C.P. 1910.16-4(a)(1)(Part D)(line 25g). In this case, as there were no additional expenses to consider under Part E, Father's adjusted basic child support amount was the ultimate, total monthly support obligation. ***See*** Pa.R.C.P. 1910.16-4(a)(1)(line 27).

Only at ***this*** point, after the ultimate monthly support obligation was determined, could the master properly consider the deviation factors under Rule 1910.16-5(b), *i.e.*, Mother's "unusual needs" or "medical expenses not covered by insurance."

The problem is that from the moment of error – the determination Mother's net income – the rest of the master's child support calculations were

off. Perhaps most importantly, the master might not have reached Part D (adjustments for shared custody) if Father had the lower income:

> Without regard to which parent initiated the support action, when the children spend equal time with their parents, the Part [D[7]] formula cannot be applied unless the obligor is the parent with the higher income. An order shall not be entered requiring the parent with the lower income to pay basic child support to the parent with the higher income.

Pa.R.C.P. 1910.16-4(c)(2) (footnote added).

The question of whether Mother is entitled to receive any child support – or is obligated to pay child support to Father – once her settlement income is included, is not before us. Here, it suffices for us to conclude that the court abused its discretion when it "failed to consider properly the requirements of the rules governing support actions." **Hanrahan**, **supra.** On remand, the court shall consider Mother's settlement payments as income when calculating child support under the guidelines.

Order vacated. Case remanded. Jurisdiction relinquished.

---

[7] In an apparent oversight, we note that Pa.R.C.P. 1910.16-4(c)(2) was not updated to reflect the post-January 1, 2019 formula (Parts A-E) following the Tax Cuts and Jobs Act of 2017; subsection (c)(2) only cites to "Part II" (substantial or shared custody adjustments in orders issued prior to January 1, 2019). However, both Part II and Part D concern adjustments for substantial custody; their language is nearly identical, and the effect is the same. As Part D still cites subsection (c)(2), we conclude (c)(2) applies to both Part D and Part II alike.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/18/2020